FILED 23 AUG '11 12:46 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

APPLETON PICKETT,

          Plaintiff,       Civil No. 09-689-TC

        v.              FINDINGS AND
                            RECOMMENDATION

MAX WILLIAMS, et al.,

          Defendants.

COFFIN, Magistrate Judge.

    Plaintiff, an inmate in the custody of the Oregon Department of Corrections, filed a 157 page complaint *pro se*, alleging that defendants violated his constitutional rights as follows:

    Claim 1 - failing to protect him from inmate assault;

    Claim 2 - denying him due process at a disciplinary hearing;

    Claim 3 - bringing false charges against him;

1 - FINDINGS AND RECOMMENDATION

Claim 4 - denial of access to the courts;

Claim 5 - denial of adequate medical care;

Claim 6 - denial of adequate medical care;

Claim 7 - subjecting him to excessive force;

Claim 8 - violating his First Amendment Rights in his legal mailings;

Claim 9 - causing him personal injuries;

Claim 10 - denial of access to the courts;

Claim 11 - retaliating against him for filing grievances and legal actions;

Claim 12 - denial of access to the courts;

Claim 13 - intentionally inflicting severe emotional distress; and,

Claim 14 - subjecting him to inhumane and unsafe living conditions.

Plaintiff also asserts ADA violations in many of his claims and alleges Equal Protection violations throughout the complaint.

Defendant now move for summary judgment (#72) on the grounds that plaintiff's claims are time barred, cannot state a cognizable legal claim, present no genuine issue of material fact, or do not establish a violation of plaintiff's clearly established constitutional rights.   Memorandum in Support (#73), p. 2.

Statute of limitations:   42 U.S.C. § 1983 does not contain a specific statute of limitations for constitutional torts.

2 - FINDINGS AND RECOMMENDATION

Therefore, federal courts "borrow" the state statute of limitations in 42 U.S.C. § 1983 actions.  See, <u>Wallace v. Kato</u>, 549 U.S. 384, 387 (2007); <u>Wilson v. Garcia</u>, 471 U.S. 261, 266 (1985); <u>Silva v. Crain</u>, 169 F.3d 608, 610 (9th Cir. 1999); <u>Vaughan v. Grijalva</u>, 927 F.2d 476, 478 (9th Cir. 1991).

In Oregon, the two year statute of limitations for personal injury actions, O.R.S. 12.110(1) applies to civil rights actions under 42 U.S.C. § 1983. <u>Sain v. City of Bend</u>, 309 F.3d 1134, 1139 (9th Cir. 2002); <u>Cooper v. City of Ashland</u>, 871 F.2d 104, 105 (9th Cir. 1988); <u>Davis v. Harvey</u>, 789 F.2d 1332 (9th Cir. 1986).

Federal law determines when a cause of action accrues and the statute of limitations begins to run on a § 1983 claim. <u>Wallace v. Kato</u>, 549 U.S. at 388; <u>Cabrera v. City of Huntington Park, et al.</u>, 159 F.3d 374, 379-80 (9th Cir. 1998). A federal claim accrues when the plaintiff know or has reason to know of the injury which is the basis of the action. <u>Morales v. City of Los Angeles</u>, 214 F.3d 1151, 1154 (9th Cir. 2000); <u>Bagley v. CMC Real Estate Corp.</u>, 923 F.2d 758, 760 (9th Cir. 1991); see also, <u>DeAnza Properties X, Ltd. v. County of Santa Cruz</u>, 936 F.2d 1084, 1086 (9th Cir. 1991); <u>Vaughan</u>, supra, 927 F.2d 486, 480 (9th Cir. 1991).

Plaintiff filed his complaint in this case on June 17, 2009.  Thus any claim based on an injury that plaintiff knew of or had reason to know of prior to June 17, 2007, is time barred.

3 - FINDINGS AND RECOMMENDATION

Plaintiff's Claim 6 ["Denial of Dental Care and Needs"] includes an allegation that on October 18, 2008 plaintiff requested "the prices for tooth crowns" and received a response on October 24, 2008.  Complaint (#2) Claim 6, p. 5. Although this action occurred within the statute of limitations, it does not constitute any sort of actionable conduct or give rise to a cognizable claim.  Plaintiff's allegation that "Dentist Putman and the Manager of Health Services wants the plaintiff to pay for his broken tooth that was not the plaintiff fault" (sic), Id., does not establish deliberate indifference to a serious medical need as discussed below.

All of the other allegations of Claim 6 concern matters having to do with pre-June 17, 2007 conduct.  Any claim based on injuries allegedly arising from such conduct is time barred.

The allegations of Claim 7 ["Excessive Use Of Force"], Claim 12 ["Denial of Access to The Court"] and Claim 13 ["Intentionally Infliction of Emotional Distress" (sic)] all concern pre-June 17, 2007 conduct.  Therefore, those claims are time barred in their entirety.[1]

Plaintiff's Claims 4, 5, 8, 9, 10, 11, and 14 also include allegations of conduct that falls outside the statute

---

[1]Claim 12 alleges that there has been an "ongoing problem with access to the legal library Coordinator Ms. Justice through December 2007," Complaint (#2) Claim 12, p. 1.  However, although this allegation refers to a time period within the limitations period, it is factually and legally insufficient to state a claim.

of limitations. To the extent that those claims are based on
pre-June 17, 2007 conduct, they are time barred. To the
extent those claims are based on allegations of injury based
on conduct alleged to have occurred within the limitations
period, they are addressed below.

Claim One - failure to protect: Plaintiff alleges that prison
officials "knowing[ly] and intentionally moved [him] to a
violent Unit" in October 2008 "with malice hoping that the
plaintiff [would become] mixed up with the problems concerning
violent inmates in Unit #9." Complaint (#2), Claim 1, p. 2.

In support of his claim plaintiff alleges:

* "that th[ere] was a fight in Unit #9 every day and
sometim[s] twice a day." Id.

* that "[o]n November 13, 2008 ... a (riot) broke out and
[he] was struck to the right side temple area of his face[,]"
Id., p. 3, and;

* that prison staff ignored his requests for a cell
change because of "serious problems" and "incompatible
differences" with cell-mates. Id., p. 2.

Ordinarily an isolated or random incident of prison
violence does not give rise to a claim for failure to protect.
The Ninth Circuit has traditionally required some sort of
notice (constructive or otherwise) of impending harm before
liability could be imposed under the Eighth Amendment for
failure to protect an inmate. See, Redman v. County of San
Diego, 942 F.2d 1435 (9th Cir. 1991); Leer v. Murphy, 844 F.2d

5 - FINDINGS AND RECOMMENDATION

628 (9th Cir. 1998); Berg v. Kincheloe, 794 F.2d 457 (9th Cir.
1986); *see also*, Daniels v. Williams, 474 U.S. 327 (1986)
(lack of due care, or negligence is not a proper basis for §
1983 liability).

The analysis for deciding a claim by an inmate under the
Eighth Amendment for failing to protect against an attack by
another inmate is set forth in Farmer v. Brennan, 511 U.S. 825
(1994); *see also*, Davidson v. Cannon, 474 U.S. 344 (1986).

In *Farmer*, the Court held that the appropriate standard
to impose liability was the functional equivalent to criminal
recklessness, and described the necessary state of knowledge
as follows:

> [A] prison official cannot be found liable under
> the Eighth Amendment for denying an inmate humane
> conditions of confinement unless the official knows
> of and disregards an excessive risk to inmate
> health and safety; the official must both be aware
> of the facts from which the inference could be
> drawn that a substantial risk of serious harm
> exists, and he must also draw the inference.
>
> * * * *
>
> [A]n official's failure to alleviate a significant
> risk that he should have perceived but did not,
> while no cause for commendation, cannot under our
> cases be condemned as the infliction of punishment.

*Farmer*, 511 U.S. at 837-38.

Thus, to establish liability under the Eighth Amendment
plaintiff must demonstrate that the condition of his
confinement objectively posed a substantial risk of serious
harm, *and* that the prison officials subjectively know of and
disregarded s known or obvious risk to the prisoner's safety.

6 - FINDINGS AND RECOMMENDATION

Farmer v. Brennan, 511 U.S. at 834.

Plaintiff's unsupported allegation that (un-named) "Superiors" intentionally moved him to Unit #9 hoping that he would get "mixed up" with violent inmates is controverted by the record which reflects that plaintiff was transferred after a disciplinary sanction disqualified him from living in Unit #13. Edison Declaration (#75), p. 2.

Plaintiff's allegation that fights occurred on a daily basis does not demonstrate how those fights put him personally at risk. Moreover, Unit #9 is no more violent than other similar housing units at TRCI. Id.

Concerning the injury plaintiff sustained on November 13, 2008, plaintiff does not explain how defendants could have anticipated or prevented, the riot. Thus plaintiff's injury appears to be the result of an isolated or random incident of prison violence.

Plaintiff's requests for cell changes fails to establish that defendants had any notice of a risk of harm to plaintiff. The record reflects that plaintiff was struck from behind during the riot. There is nothing in the record to demonstrate that plaintiff was harmed by his cell-mate.

Plaintiff has failed to establish a material issue of fact that the conditions of his confinement created an objective, substantial risk of serious harm or that defendants subjectively knew of and disregarded a known or obvious risk to his safety.

7 - FINDINGS AND RECOMMENDATION

Claim 2 - due process violation: Plaintiff alleges that he was
denied due process in a disciplinary hearing on October 3,
2008, because he was "denied a request for an investigation
and to call witnesses."  Complaint (#2), Claim 2, p. 1.[2]

    The Due Process Clause of the Fourteenth Amendment
protects against deprivations of "life, liberty or property
without due process of law."  U.S. Const. Amend XIV, § 1.  "To
establish a violation of procedural due process a Plaintiff
must demonstrate: (1) a deprivation of a constitutionally
protected liberty or property interest, and (2) a denial of
adequate procedural protections."  Tutor-Saliba Corp. V. City
of Hailey, 542 F.3d 1055, 1061 (9th Cir. 2006).  Procedural due
process in the prison disciplinary hearing context is
satisfied if an inmate receives: (1) written notice of the
charges; (2) at least a brief period of time after the notice
to allow for preparation; (3) a written statement of the
evidence relied on and the reasons for the disciplinary
action; (4) a limited right to call witnesses and present
documentary evidence; and (5) if the inmate is illiterate,
allowance to seek the assistance from a fellow inmate or
staff.    Wolff v. McDonnell, 418 U.S. 539, 564-70 (1974);
Walker v. Summer, 14 F.3d 1415, 1420 (9th Cir. 1994), overruled
on other grounds by Sandin v. Conner, 515 U.S. 472, 483-84
(1995).

_____

[2]Plaintiff does not name the hearings officer as a defendant
or allege that any of the named defendants participated in or knew
about the hearings officer's allegedly unconstitutional conduct.

The minimum procedural due process protections required at prison disciplinary hearing set forth in *Wolff v. McDonnell* do not include the right to an "investigation."

An inmate's "limited" right to call a witnesses is subject to the "necessary discretion" of prison officials "to keep the hearing within reasonable limits and refuse to call witnesses that may create the risk of reprisal or undermine authority[.]" *Wolff*, 418 U.S. at 566.  Prison officials can deny an inmate's request to call witnesses based on "irrelevance, lack of necessity, or the hazards presented in individual cases." Id.

Plaintiff has not identified the witnesses he wanted to call or alleged how their testimony would have been relevant to the proceedings.

The Disciplinary Hearing Findings of Fact, Conclusions, and Order indicate that the witnesses plaintiff requested were "credibility witnesses" and the reason they were denied was because any information obtained from them would not constitute a defense to the charges, nor substantially lessen the severity of the violations. Deacon Declaration (#77), p. 1-2.  Thus, based on the record before the court, I find that the denial of plaintiff's request to call "credibility witnesses" was within the hearings officer's discretion, was reasonable and did not violate plaintiff's procedural due process rights.

Plaintiff also alleges that he was denied administrative

9 - FINDINGS AND RECOMMENDATION

review of the disciplinary hearing. However, administrative review is not one of the minimum due process protections required under *Wolff v. McDonnell*.

Claim 3 - false charges: Plaintiff alleges that defendants violated his constitutional rights by "knowingly bringing false charges against him and by conducting [the] subsequent disciplinary hearing in a wrongful manner." Complaint (#2), Claim 3, p. 1.

A "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest" so long as he is "not . . . deprived of a protected liberty interest without due process of law." *See*, Freeman v. Rideout, 808 F.2d 949, 952 (2nd Cir. 1986).

As discussed above, plaintiff has failed to demonstrate any violations of the minimum procedural due process protections enunciated in *Wolff*. Therefore, defendants are entitled to judgment as a matter of law with respect to plaintiff's Claim 3.

Claim 4 and 11 - inadequate grievance process / access to courts: The allegations of plaintiff's Claim 4 ["inadequate grievance process"] can be liberally construed as attempting to allege a claim for denial of access to the courts. Plaintiff's Claim 10 alleges that "legal Coordinator Ms. Justice('s) failure to provide competent legal assistance, materials, tools, and adequate time in the legal library

10 - FINDINGS AND RECOMMENDATION

violated plaintiff's right of access to the courts." Complaint (#2), Claim 10, p. 1.

It is well settled that inmates have a constitutional right of meaningful access to the courts. Lewis v. Casey, 518 U.S. 343, 350 (1996). However, a prisoner's right of access to the courts does not "require the maximum or even the optimal level of access." Bounds v. Smith, 430 U.S. 817, 821-23; King v. Atiyeh, 814 F.2d 565, 568 (9th Cir. 1987). The objective of the Supreme Court's access requirements was to remove barriers to court access that imprisonment erected, not to grant inmates advantages not shared by the general unimprisoned public. Hooks v. Wainwright, 775 F.2d 1433, 1436-37 (11th Cir. 1985), cert. denied, 479 U.S. 913 (1986).

In Bounds v. Smith, supra, the Supreme Court held that the "fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds, 430 U.S. at 829; Lindquist v. Idaho State Bd. of Corrections, 776 F.2d 851, 855 (9th Cir. 1985) (expressly adopting Bounds recognition of alternative means to meet due process requirement of access to the courts. Prison officials may not, of course, actively impede an inmates access to courts by failing to file his complaints or by confiscating directly relevant material, Vigliotto v. Terry, 873 F.2d 1201 (9th Cir. 1989), but their

11 - FINDINGS AND RECOMMENDATION

affirmative obligations end when a law library and basic supplies are afforded.

There is no abstract, freestanding right to a law library or legal assistance. Lewis v. Casey, 518 U.S. 343 (1996). Thus an inmate does not state a constitutional claim simply by establishing that a prison library or legal assistance program is sub par in some theoretical sense. Id.

In order to establish a violation of the constitutional right of access to the courts a prisoner must establish two things. First he must show that the access was so limited as to be unreasonable. Vandelft v. Moses, 31 F.3d 794, 797 (9th Cir. 1994). Second, he must demonstrate that the inadequate access caused him an actual injury. To establish an actual injury, the inmate must demonstrate a specific instance in which he was actually denied access to the courts. Id.

A plaintiff must show that he suffered an "actual injury" by establishing that "the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim" by showing "for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to being before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint." Lewis v. Casey, 518 U.S. at 351.

12 - FINDINGS AND RECOMMENDATION

Plaintiff generally alleges that the legal coordinator gave him "insufficient time to complete legal process," interfered with his "legal processes" by inspecting his documents and gave him "bad advice." Complaint (#2) Claim 10, p. 1-12.

None of these allegations specifically allege an "actionable wrong" that plaintiff wished to bring before the courts or that the deficiencies of the law library or legal coordinator hindered plaintiff's pursuit of a specific legal claim.

In Claim 4 plaintiff generally alleges that defendants' failure to process his grievances    interfered with his attempts to exhaust remedies to his "complaints." Complaint (#2) Claim 4, p. 1.

Although plaintiff alleges that some of his grievances were returned to him for various deficiencies in form and content, he has failed to establish that he was prevented or prohibited from correcting and resubmitting proper grievances. Therefore,  he has failed to identify a specific legal claim that was thwarted by the  return or denial of his grievances.

In short, plaintiff has failed to establish any "actual injury" that would support a claim of denial of access to the courts under 42 U.S.C. § 1983.

Claims 5, 6 and 9 - inadequate medical care: In claims 5, 6 and 9, plaintiff alleges that his Eighth Amendment right to be free from cruel and unusual punishment was violated by

13 - FINDINGS AND RECOMMENDATION

defendants' "deliberate indifference to [his] health, care and needs."  Complaint (2), p. 33.[3]

To prevail on a claim that medical treatment has been denied or inadequately rendered, a prisoner must establish that there has been a "deliberate indifference to [his] serious medical needs."  Estell v. Gamble, 429 U.S. 97, 104 (1976); Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000); see also, Clements v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002); McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992).

Whether a medical condition is serious is ordinarily a question left to physicians, Brownell v. Figel, 950 F.2d 1285, 1291 (7th Cir. 1991) Davis v. Jones, 936 F.2d 971, 992 (7th Cir. 1991), but in general a medical condition is serious if it is life threatening or poses a risk of needless pain or lingering disability if not treated at once. Id., 936 F.2d at 972; see also, Farmer v. Brennan, 511 U.S. 825, 847 (1994).

Medical malpractice, even gross malpractice, does not amount to a violation of the Eight Amendment, see, Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980). Thus, a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment does not raise a claim under 42 U.S.C. § 1983. Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004). "Rather, to prevail on a claim involving choices between alternative courses of treatment, a

---

[3]As noted above, the material allegations of Claim 6, refer to conduct or incidents that did not occur within the statute of limitations.

14 - FINDINGS AND RECOMMENDATION

prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" Id, (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996.

Because courts lack medical expertise, "where prisoners receive some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgment." Miranda v. Munoz, 770 F.2d 255, 259 (1st Cir. 1985); Layne v. Vinzant, 657 F.2d 468, 474 (1st Cir. 1985); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004).

Plaintiff cites numerous instances of defendants' alleged indifference to his medical and health care needs. However, the only specific factual allegation of an injury within the two year statute of limitations concerns the injury plaintiff sustained in November, 2008 when he was "struck to the right side temple of [his] face" during a prison riot. Complaint (#2), Claim 5, p. 14. Plaintiff alleges that "Health Care Services failed to diligently provide health care and diagnose the plaintiff's injuries" resulting in "head pains on the right side of his face and burry vision (sic) in his right eye." Id.

Plaintiff's allegation regarding his injury fails to establish that plaintiff has a serious medical need or that defendants purposefully ignored or failed to address

15 - FINDINGS AND RECOMMENDATION

plaintiff's medical needs.

The un-controverted Declaration of Steven D. Shelton, M.D. establishes that Dr. Lytle monitored plaintiff's hypertension condition (which causes headache complaints and ordered eye exams. Shelton Declaration (#76) p. 6. On January 9, 2009, medical staff examined plaintiff in response to his complaints of facial numbness and headaches. Staff checked plaintiff's neurological signs and determined that plaintiff had normal nerve functioning in his face. Id. Dr. Lytle saw plaintiff on March 27, 2009 in response to his complaint of "blurry vision, lightheadedness, and dizziness" and determined that plaintiff's "vital signs were stable, and his pupils were equal and reactive to light." Id. Plaintiff was encouraged to take Ibuprofen and return if the headaches changed in intensity or he developed additional symptoms." Id.

Although plaintiff disagrees with defendants treatment of his head injury, as noted above, plaintiff's disagreement with his treating physician's opinion or course of treatment does not give rise to a claim under the Eighth Amendment. The record reflects that defendants were not deliberately indifferent to plaintiff's serious medical needs and that plaintiff received constitutionally adequate medical treatment.

Plaintiff's Claims 5 and 9 allege that defendants' failure to provide him with adequate medical care violated the Americans with Disabilities Act, 42 U.S.C. 12131.

16 - FINDINGS AND RECOMMENDATION

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002).

Plaintiff has not alleged facts that would establish he is a "qualified individual" or that defendants' alleged indifference to his medical needs was motivated by disability based discrimination. Therefore, plaintiff's ADA claim fails to state a claim.

Claim 8 - Opening legal mail: Plaintiff alleges that on one or more dates within the statute of limitations he notified the mail-room manager that mail-room staff had opened his legal mail outside his presence. Complaint (#2) Claim 5, p. 4-5.

However, plaintiff has not alleged any details to establish that the mail allegedly opened was properly designated or qualified as "legal mail," or who allegedly opened it or, when.

The Declaration of Vickie Wilson, supervisor of the TRCI Mailroom during the times relevant to plaintiff's claims establishes that staff processes incoming and outgoing inmate according to the Oregon Department of Corrections Administrative Rules. Declaration of Vickie Wilson (#75) p. 2.

Plaintiff's conclusory allegation that he complained

17 - FINDINGS AND RECOMMENDATION

about staff opening his mail outside of his presence is insufficient to create a material issue of fact that his legal mail was improperly processed.

Claim 11 - "Interference with punishment and retaliation":

A properly pleaded complaint which alleges retaliation for the exercise of a constitutional right states a cause of action under 42 U.S.C. § 1983. Mt. Healthy City Bd. Of Ed. V. Doyle, 429 U.S. 274 (1977). The claim must include an allegation that the plaintiff engaged in conduct that is constitutionally protected and that the conduct was a substantial or motivating factor for the defendant's action. Id., at p. 287.

"A prisoner suing state prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994). The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct about which he complains. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). Courts should "afford appropriate deference and flexibility to prison officials in the evaluation of proffered penological reasons for conduct alleged to be retaliatory. Id., at 807 (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)).

18 - FINDINGS AND RECOMMENDATION

The nature of a retaliation claim requires that it be "regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994).

When an inmate alleges that he has been subjected to disciplinary action in retaliation for the exercise of constitutional rights, the claim is not actionable unless the disciplinary action is based on a *false* disciplinary report. Orebaugh v. Caspari, 910 F.2d 526 (8th Cir. 1990). Otherwise, a prisoner could "openly flout" prison rules after filing a grievance and then bring a claim under section 1983 arguing that prison officials disciplined him in retaliation for filing the grievance. Id., 910 F.2d at 528.

Plaintiff's retaliation claim consists of 57 pages and very few of the factual allegations concern events within the statue of limitations period. The incidents alleged to have occurred which could arguably be construed as retaliatory are as follows:

* "On June 17, 2008 ... Corporal P. Day searched [plaintiff's] cell ... and stated that all clothes stored on the wall hooks, laundry bags, and excessive legal papers ... exceed[ed] storage space [and] violated housing regulations. [in retaliation for] complaints and grievances filed against Corporal P. Day." Complaint (#2), Claim 11, p. 35.

* Plaintiff alleges that it was retaliation when, in

July, 2008, Officer Alford confiscated his eyeglasses "when the len[s] came out of the frame. Id. at p. 36.

\* Officers Alford and Day allegedly engaged in "obvious retaliation" when on September 29, 2008, they accused him of being responsible for "a missing sewing needle," resulting in a misconduct report. Id., p. 40.

Plaintiff has not met his burden of establishing the allegedly retaliatory actions he complains of were not supported by a legitimate penological goals. Each of the alleged actions is clearly and directly related to institutional safety and order - viz. keeping cells free of obstruction and keeping sharp objects out of the hands of inmates.

Plaintiff's claim that he was falsely accused of responsibility for the "missing sewing needle" fails as a factual matter because plaintiff was found guilty of that offense in a due process disciplinary hearing.

Claim 14 - Inhumane and unsafe living conditions: Plaintiff's claim that his rights under the Eighth Amendment were violated when he was subjected to "inhumane and unsafe living conditions at TRCI" is unsupported by any specific factual allegation and appears to be an attempt to summarize the allegations of defendants' "deliberate indifference" to his physical and psychological needs.

I find that none of the facts alleged in plaintiff's complaint are sufficient to establish a claim under the Eighth

Amendment.

The Eighth Amendment proscribes punishments which involve the "unnecessary and wanton infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Gregg v. Georgia, 428 U.S. 153, 173 (1976).

In order to establish liability under the Eighth Amendment, a plaintiff must prove two distinct components: 1.) that the plaintiff actually suffered an extreme deprivation or was placed at a substantial risk of suffering a significant injury; and 2) that the defendants acted with a sufficiently culpable state of mind (deliberate indifference). Wilson v. Sieter, 501 U.S. 294, 298 (1991); LeMaire v. Mass, 12 F.3d 1444, 1451 (9th Cir. 1993); May v. Bladwin, 109 F.3d 557, 565 (9th Cir. 1997).

The Eighth Amendment does not apply to every deprivation or even every unnecessary deprivation, suffered by a prisoner, but only that narrow class of deprivation "serious injury inflicted by prison officials acting with a culpable state of mind." Hudson v. McMillian, 503 U.S. 1 (1992).

There is a *de minimis* level of imposition with which the Constitution is not concerned. Ingraham v. Wright, 430 U.S. 651, 674 (1977). Extreme deprivations are required to make out a conditions of confinement claim. Because routine discomfort is "part of the penalty that criminal offenders pay for their offense against society," only those deprivations denying the 'minimal civilized measure of life's necessities'

21 - FINDINGS AND RECOMMENDATION

are sufficiently grave to form the basis of an Eighth Amendment violation." Hudson v. McMillian, supra, at p. 8-9, quoting Rhodes v. Chapman, supra at 347 and Wilson v. Seiter, supra at 298.

Plaintiff's allegations in this case reflect nothing more than his dissatisfaction with the "routine discomforts" of prison life and are insufficient to establish a "unnecessary or wanton infliction of pain" or a deprivation of the "minimal civilized nature of life's necessities."

Equal Protection: Throughout plaintiff's complaint he cites the Fourteenth Amendment and references "equal protection."

In order to establish an equal protection claim under § 1983, plaintiff must demonstrate that defendants intentionally discriminated against him based upon his membership in a protected (ie. "suspect") class. Thorntom v. City of St. Helens, 425 F.3d 1158, 1166 (9ᵗʰ Cir. 2005).

Plaintiff has not alleged he is a member of a protected class or demonstrated that defendants discriminated against him based on his membership in a protected class. Therefore, plaintiff has failed to state a Fourteenth Amendment equal protection claim as a matter of law.

Qualified Immunity" To the extent that plaintiff may have established a violation of his constitutional rights or a material issue of fact concerning any of his claims, I find that defendants are entitled to qualified immunity from liability in damages because they did not violate plaintiff's

22 - FINDINGS AND RECOMMENDATION

clearly established constitutional rights. <u>Brosseau v. Haugen</u>, 543 U.S. 194, 202 (2004); <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982); <u>Act Up!/Portlandv. Bagley</u>, 988 F.2d 868 (9th Cir. 1993). Moreover, plaintiff has not established that there is very significant possibility that is both real and immediate that plaintiff will be harmed in the future by any unconstitutional practices, plaintiff is not entitled to equitable relief. <u>Loas Angeles v. Lyons</u>, 461 U.S. 95 (1983).

I find that they are no genuine issues as to any material of fact remaining in this case and that defendants are entitled to judgment as a matter of law. Defendants' Motion for Summary Judgment (#72) should be allowed. Plaintiff's Motion for Summary Judgment (#48) should be denied. This action should be dismissed.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to <u>de</u> <u>novo</u> consideration of the

factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this 22 day of August, 2011.

_____
Thomas M. Coffin
United States Magistrate Judge